135 N.J. Super. 62 (1975)
342 A.2d 580
JOSEPH SIKORA, IND., AND JEFFREY SIKORA, AN INF. BY HIS G/A/L, JOSEPH SIKORA AND KATHLEEN MARIE SIKORA, PLAINTIFFS,
v.
WESLEY WADE, KELSEY WADE AND IDA WADE, AND RAYMOND J. McERLEAN, JR., DEFENDANTS.
Superior Court of New Jersey, Law Division.
May 23, 1975.
Mr. Robert J.T. Mooney for plaintiffs (Messrs. Buttermore and Mooney, attorneys).
Mr. Mark Stanton for defendants Wade (Messrs. Stanton and Recht, attorneys).
Miss Joan Sherman for the defendant McErlean (John W. Taylor, attorney).
*63 GRIFFIN, J.C.C., Temporarily Assigned.
Plaintiff was injured in an automobile accident. He has started suit against Wesley Wade an unlicensed driver, Wesley Wade's parents, and Raymond McErlean, the donor of the car. At the close of plaintiff's case defendant Raymond McErlean moved for an involuntary dismissal of the claim against him. Pursuant to R. 4:37-2(c) the court reserved decision until the conclusion of the trial.
The issue is one of first impression in New Jersey. The court must determine whether the donor of an automobile may be held liable in tort to third persons injured by the negligence of the donee after title to the automobile has been transferred.
McErlean had title to a 1963 Rambler which was used by his 18-year old son. The car failed to pass inspection in August 1972. His son was not permitted to take the car to college. McErlean decided to dispose of the car for junk. At this point McErlean's son found that Wesley Wade, whom he knew slightly but not particularly well, would like to have the car. Upon discussing this with his father, his father consented to give the car to young Wade. Wade was, in fact, about 16 years and 10 months old and unlicensed. McErlean had never met, seen or talked to him. He had no knowledge of his prior driving experience and no knowledge as to whether or not he was licensed. He made no inquiry. He simply endorsed the certificate of title, gave it to his son and instructed his son to give the certificate together with the car to Wade.
The day after this was done plaintiff, while a passenger in the Wade car, was injured while Wade was driving on private property. Giving the plaintiff the benefit of all inferences on the motion, it may be assumed that McErlean should have known that Wade was unlicensed because he knew Wade was behind his own son in high school.
The Restatement, Torts 2d § 390, reads:
One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know *64 to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.
The comment under this section reads, in part:
The rule stated applies to anyone who supplies a chattel for the use of another. It applies to sellers, lessors, donors or lendors, and to all kinds of bailors, irrespective of whether the bailment is gratuitous or for a consideration.
New Jersey has recognized the rule, at least in principle, in two cases involving parents giving children access to firearms. See Mazzilli v. Selger, 13 N.J. 296 (1953), and Stoelting v. Hauck, 32 N.J. 87 (1960).
In other jurisdictions it has been held that one who lends his motor vehicle to another knowing him to be incompetent may be held liable for such person's negligence. See Snow-white v. State, 243 Md. 291, 221 A.2d 342 (App. Ct. 1966) (owner knew driver frequented bars and was often intoxicated); Fogo v. Steele, 180 Kan. 326, 304 P.2d 451 (Sup. Ct. 1956) (mother knew son was a reckless driver). Most of the cases, however, do not impose this liability when title to the car has been transferred, even in the case of a parent-child relationship. There is some split authority on this, however. See Jenkins v. Bridges, 93 Ga. App. 241, 91 S.E.2d 317 (App. Ct. 1956); Brown v. Harkleroad, 39 Tenn. App. 657, 287 S.W.2d 92 (Tenn. Ct. App. 1955); but see, Golembe v. Blumberg, 262 App. Div. 759, 27 N.Y.S.2d 692 (App. Div. 1941) (father liable for accident caused by epileptic son who had seizure while operating car).
Both sides of this issue are presented in the case of Estes v. Gibson, 257 S.W.2d 604 (Ky. Ct. App. 1953). In that case a parent purchased an automobile for an adult son known to be an inebriate and drug addict. Plaintiff was seriously injured as a result of an accident caused by the son. The court held that a cause of action was not stated against the parent and said:
*65 To impose legal liability there must always be a reasonably close causal connection between an act and the resulting injury. The vicarious liability of an owner or controller for putting an automobile, which is not in itself inherently a dangerous instrumentality, in possession of another person known to be habitually unfit to drive it, with the foreseeable and probable consequences that he will hurt somebody, is at most a secondary liability. The doctrine ought not to be extended where the party sought to be charged had no control over the machine and the other party actually committing the injurious wrong was the owner, sui juris. In addition, and ordinarily, as here, the causation is too tenuous and too remote. There are too many probable and imponderable intervening events and conditions between the gift of the car and its negligent operation by the owner-driver. [at 607-608]
In a strong dissent the following language was used:
I am unable to discern a reasonable basis distinction in the negligence of one who lends his car and one who gives a car to a known incompetent or reckless driver. If there is a distinction, the more reasonable view would suggest that one who gives an automobile to a known incompetent driver, placing in him power to use it at any and all times, drunk or sober, sane or insane, is more negligent than one who merely lends the vehicle for one specific occasion. [at 608]
In the case at bar there was no family relationship nor was there actual knowledge of incompetence. At most there may have been an obligation to inquire.
None of the cases reviewed discuss the problem of public policy which seems important to the court in this situation. If the donor of a car has an obligation to inquire into the donee's driving ability, so also would the vendor of a car. Must the vendor who advertises a car for sale check the background of the stranger who comes to purchase? Must an automobile dealer check the driving ability of every potential purchaser? The answer is obviously no. Such a requirement would unduly hamper commerce and would pose an undue burden on ordinary business relationships. It is one thing to impose liability on the possessor of a car who lends it to a person known to be a dangerous driver, but it is quite another to take the two steps required in order to hold defendant McErlean in this litigation. The first step would *66 be to impose a duty of inquiry upon the possessor when he has no actual knowledge as to the driving ability of the borrower, and the second would be to impose such liability after title to the car has been transferred.
In this case the certificate of title had been properly endorsed and delivered, together with the physical possession of the automobile, the day before the accident occurred. The fact that the donee had not yet registered the car in his own name has no bearing on ownership as between donor and donee. It is simply a requirement in order to enable the donee to legally operate the motor vehicle.
The motion of defendant McErlean for a dismissal will be granted.