[No. H003796. Sixth Dist. Mar. 7, 1988.]

DODGE CENTER, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY,
Respondent;
JULIE ANDERSON et al., Real Parties in Interest.

**COUNSEL**

David J. Stock, Stephen P. McCarthy and Mitchell & Stock for Petitioner.

Houston N. Tuel, Jr., and Coder & Tuel as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Robert H. Morgan, Morgan & Towery, Robert W. Hogan, Hogan, Clark & Stutzman and David B. Fisher for Real Parties in Interest.

## OPINION

**BRAUER, J.**—Petitioner Dodge Center (Dodge) seeks a writ of mandate pursuant to Code of Civil Procedure section 437c, subdivision (*l*), to vacate a partial summary adjudication in favor of real parties in interest Anderson and Naumann and to compel summary adjudication in favor of Dodge. The issue is whether Dodge, a retail seller of motor vehicles, may be liable to real parties based on its sale of a vehicle to an unlicensed adult driver (Marvin L. Adams, Jr.), who, three months after the sale, collided with a motorcycle on which real parties were riding, injuring them.

The underlying action consolidates personal injury complaints filed by Anderson, Naumann, and their insurance carrier, (hereafter collectively referred to as plaintiffs) against several defendants including petitioner Dodge; Marvin Lee Adams, Jr., the driver of the car (Adams); and Frank George Adams, stepbrother of Marvin Adams and a co-owner of the car. A collision occurred on September 30, 1984, between a 1984 Dodge light pickup truck driven by Adams and a motorcycle on which Anderson and Naumann were riding, on a winding portion of Highway 84 in San Mateo County. Anderson and Naumann both sustained personal injuries. Adams had no valid driver's license then in effect.

Dodge sold the vehicle to Adams on June 28, 1984 (taking a security interest in the vehicle which it transferred to Western Financial Savings Bank on July 5, 1984). Department of Motor Vehicle records show that at the time of the sale and continuously up to the time of the accident, Adams had no valid driver's license. His license had expired on his birthday in 1981 and he had not reapplied for another one. On January 5, 1983, his driving privilege was listed as suspended on Department of Motor Vehicles records. He did not apply for another license until the day the suspension ended, on October 30, 1984, after the accident in question had occurred. His driving record included several Vehicle Code violations and failures to appear.

Adams stated in his deposition that he told Dodge employees he had a license, reciting the number from memory when it was needed to fill in the purchase forms, but he did not produce one for inspection. That is the only evidence on the subject.[1]

William Mitchell, the salesman who delivered the vehicle to Adams, said in his deposition that he understood the principal operator of the truck was

---

[1] The Dodge employees who had any involvement with the sales transaction either did not remember any details or did not recall asking for or seeing Adams's driver's license. Clearly this testimony is not evidence of what actually happened; it would not sustain a finding on the issue.

to be Adams. When Adams purchased the truck, he drove the vehicle to his stepbrother's residence with Mitchell following, so that Adams's step-brother (codefendant Frank G. Adams) and his wife could sign the documents as co-owners, as additional loan security. Mitchell observed nothing unusual about Adams's driving.

The credit application prepared for Adams at the dealership showed a California driver's license number for Adams. Employee Chris Anne Bender, the sales representative who completed the application with Adams, did not recall the transaction.

The insurance agent who wrote insurance for Adams—Joseph Montemarano—said in his deposition that Adams verbally provided a driver's license number and a receipt from the Department of Motor Vehicles which led Montemarano to believe that a license had been issued. (Later Adams allowed his insurance to lapse and was not insured at the time of the accident.)

On July 25, 1984, Adams received a traffic citation for speeding from officer George Adler in San Mateo County. The notice to appear indicated a driver's license number for Adams. Officer Adler, on deposition, did not remember the circumstances under which he gave the citation. He did say that if Adams had had no license he would routinely have been cited, and that if the officer had known of Adams's record of license suspensions he would have taken him to jail. He also said he ordinarily requests a driver's license and the vehicle registration.

As stated above, the evidence is uncontested that Adams misled Dodge employees into believing he had a license. No Dodge employee, so far as the record shows, was aware of Adams's driving record or of the fact he had no license.

Plaintiffs sued Dodge either (1) on the basis of the common law theory of negligent entrustment, or (2) on the theory that the sale to an unlicensed driver without inquiry as to his license status violated Vehicle Code section 14606. Dodge sought summary judgment on the basis that it is under no statutory or common law duty to investigate a buyer's driver's license, and that even if it were subject to such a duty, the breach was not a proximate cause of plaintiffs' injuries three months after the sale. Also, Dodge sought summary adjudication of these issues: (1) the automobile dealer is not an owner of the motor vehicle in question; (2) sale to an unlicensed individual is not per se a violation of Vehicle Code section 14606; (3) Dodge did not manage, maintain, or operate the motor vehicle at the time of the accident;

(4) Dodge did not negligently entrust the vehicle to Adams; (5) Dodge was not the proximate cause of the accident.

The trial court granted plaintiffs' motion for summary adjudication that Dodge negligently entrusted the 1984 Dodge pickup truck to Adams, and denied Dodge's motion for summary adjudication. The court also found the following issues to be without substantial controversy: (1) Adams had no driver's license continually from his birthday in 1981 until October 30, 1984; (2) Dodge permitted Adams to take possession of and to drive a vehicle which was under its control on June 28, 1984; (3) Adams operated the vehicle without a license from June 28, 1984, to September 30, 1984, when he collided with a motorcycle driven by Naumann and on which Anderson was a passenger; (4) Dodge negligently entrusted the vehicle to Adams.

## DISCUSSION

### 1. *Timeliness*

Plaintiffs contend the petition for writ of mandate is untimely within Code of Civil Procedure section 437c, subdivision (*l*). The trial court originally filed its order granting plaintiffs' request for partial summary adjudication and denying Dodge's request for summary judgment on October 28, 1987, notice of entry served by mail on October 29. If that order were the final order in the matter, the petition would have been due in this court within 10 days, plus 5 days for the mail service of notice of entry, leading to a due date of November 13. The trial court gave petitioner an extension to file the petition until November 20. Since the petition was actually filed on November 23, 1987, plaintiffs contend it is three days late. But the original order did not comply with the requirements of Code of Civil Procedure section 437c, subdivision (f), because it did not specify those issues that were without substantial controversy, as the statute requires. Accordingly plaintiff Anderson presented an order to the court which did comply with the statute, and that order was signed and served on November 6, 1987. A due date of 15 days from that date was Monday, November 23, 1987, (since the court was closed on Nov. 21 and 22).

Clearly the first order which did not comply with the statute was not a valid order nor was it intended to be the final disposition of the matter, as the parties recognized, since they acquiesced in the presentation of a new, complying order without any formal motion for reconsideration or other procedure to bring the matter before the court anew. Under these circumstances the time to file a petition for review by writ of mandate clearly did not begin to run until entry and service of notice of the final order.

(Compare the rule that when an opinion of the appellate court is modified in a manner affecting the judgment the time begins to run anew for determining when the opinion is final. California Rules of Court, rule 24(a).) Accordingly, the petition is timely filed in this court.

### 2. Substantive Issues

Vehicle Code section 14606, subdivision (a) in relevant part provides that no person shall "knowingly permit or authorize the driving of a motor vehicle, owned by him or under his control, upon the highways by any person unless the person is then licensed for the appropriate class of vehicle to be driven."[2] This statute (and its predecessors) make a motor vehicle owner who knowingly entrusts his vehicle to an unlicensed driver liable for a third party's injuries caused by the driver's negligence. (*Owens* v. *Carmichael's U-Drive Autos, Inc.* (1931) 116 Cal.App. 348 [2 P.2d 580]; *Hartford Accident & Indemnity Co.* v. *Abdullah* (1979) 94 Cal.App.3d 81 [156 Cal.Rptr. 254].) The cause of action parallels that at common law for negligent entrustment, resting on a demonstration of knowing entrustment to an incompetent or dangerous driver with actual or constructive knowledge of his incompetence. (See *Hartford Accident & Indemnity Co.* v. *Abdullah, supra*; see generally Rest.2d Torts, § 390, P. 314; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts § 650 pp. 2929-2931.)

Section 14606, like the common law cause of action for entrustment, requires a showing of knowledge of the incapacitating condition, which under the statute is lack of a license. In the absence of such knowledge there is no duty to inquire. (*Johnson* v. *Casetta* (1961) 197 Cal.App.2d 272, 274 [17 Cal.Rptr. 81].) Here, as in *Johnson*, no evidence is offered tending to show that Dodge, through any of its employees, knew or should have known of any facts suggesting either that Adams had no license or that he was not a competent driver. Accordingly the proof falls short of establishing, even for summary judgment purposes, that there are triable issues of fact as to whether Dodge violated the statute or incurred common law liability for negligent entrustment.

Further, we doubt that a *sales* transaction can give rise to either of the above types of liability, statutory or common law. No statute makes it unlawful for a motor vehicle retailer to sell to an unlicensed driver. Similarly no statute imposes on such a retailer a duty to inquire as to the purchaser's license status. In contrast, a specific statute imposes such a duty on one who rents a motor vehicle, requiring inspection of the driver's license of the

---

[2] All further statutory references are to the Vehicle Code unless otherwise stated.

person to whom the vehicle is to be rented and comparison of the signature on the license with that of the person seeking to rent. (§ 14608.)

Section 14606 refers only to the act of allowing another to drive a vehicle owned by the entrustor or under his control; it does not refer to a sales transaction in which ownership and control pass from the seller to the purchaser. Obviously such a transaction does not result in any form of an entrustment, because the dealership retains no control. (Not even taking back a security interest would confer such ownership rights on the dealership; section 17156 specifically provides that an ownership interest in a vehicle under a conditional sales contract does not make the seller an owner for purposes of the imputed liability statutes. See e.g. *Bowden* v. *Bank of America* (1950) 36 Cal.2d 406, 414 [224 P.2d 713].)

In addition to specifically emphasizing that there can be no liability unless permission to drive is given to one *known* to be unlicensed, the decision in *Johnson* v. *Casetta, supra,* also notes that the statute (former § 335, now § 14606) does not prohibit the *sale* of a motor vehicle to an unlicensed person. "Many car buyers are not licensed to drive but have others, such as employees, drive. The purpose of the section is to deter driving by unlicensed persons." (*Johnson* v. *Casetta, supra,* 197 Cal.App.2d at p. 276.)

Although it has been suggested that the sale of an automobile to an unlicensed and inexperienced person with actual or presumptive knowledge that the incompetent person is going to drive it may form a basis for imposing tort liability for negligent entrustment under some circumstances (see Rest.2d Torts, *supra,* § 390; *Perez* v. *G & W Chevrolet, Inc.* (1969) 274 Cal.App.2d 766, 768 [79 Cal.Rptr. 287]; *Drake* v. *Morris Plan Co.* (1975) 53 Cal.App.3d 208, 211 [125 Cal.Rptr. 667]), no California decision actually appears to have based such liability upon an automobile sales transaction. The general basis of liability for entrustment under the Restatement is the act of entrusting a potentially dangerous instrumentality to one who is likely to misuse it. (See Rest.2d Torts, *supra,* §§ 308, 390; 4 Witkin, Summary of Cal. Law, *supra,* § 650 at p. 2929.) The California decisions involve loans or permissive use transactions where the entrustor retains an ownership interest in the vehicle. For example, the decision in *Hartford Accident & Indemnity Co.* v. *Abdullah, supra,* was one where a dealership permitted the unlicensed driver to test drive the vehicle before purchase. Although plaintiffs argue here that the decision in *Johnson* v. *Casetta, supra,* is a holding on the point, in fact all that decision held was that a seller's actual knowledge of the buyer's incompetence to drive might be a basis for liability for negligent entrustment. (*Johnson* v. *Casetta, supra,* 197 Cal.App.2d at pp. 275-276.) The *Johnson* decision reversed a nonsuit on the opening

statement to give plaintiffs an opportunity to attempt to prove the sellers' actual knowledge of the buyer's inability to drive. Not only does the decision say nothing about whether liability of a motor vehicle seller may be based on sale to an unlicensed buyer, but it specifically does say that the predecessor of Vehicle Code section 14606 did not prohibit sale to an unlicensed person. "Many car buyers are not licensed to drive but have others, such as employees, drive. The purpose of the section is to deter driving by unlicensed persons." (*Johnson* v. *Casetta, supra,* at p. 276.)

The Restatement language speaks of "suppl[ying]" a chattel "for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others . . . ." (Rest.2d Torts, *supra,* § 390, p. 314.) The rule is stated to apply to sellers, lessors, donors or lenders. (*Id.* at p. 315.) But none of the examples given under the section involve the sale of an automobile. (There are several decisions, though by no means a uniform rule, positing liability on a donative transaction where the donor gives the vehicle to an incompetent donee. See Annot. (1983) 22 A.L.R.4th 738.)

Not only do there appear to be no decisions basing liability upon sale to an unlicensed driver, but at least one decision states that such a basis for liability would be unwise as a matter of public policy. That decision rejects the rule that a donor may be liable for a donee's negligent operation of a vehicle when the donor gave the vehicle without knowledge of the donee's incompetence or licensed status. The decision points out that for public policy reasons a vehicle donor should not be held liable, absent family relationship or actual knowledge of incompetence, because such a rule might result in a vendor also being held liable for selling a car without investigating the purchaser's background. The court said such a requirement would unduly hamper commerce and ordinary business relationships. (*Sikora* v. *Wade* (1975) 135 N.J.Super. 62 [342 A.2d 580], discussed in Annot., *supra,* 22 A.L.R.4th 738, 744.)

Although plaintiffs cite many cases allegedly supporting their position, the only decision involving a sales transaction is *Johnson* v. *Casetta, supra,* which case, as we have said already, in actual holding did no more than reverse a nonsuit on the opening statement to allow plaintiffs to attempt to demonstrate the seller's actual knowledge of the buyer's inability to drive. (In addition to the decision in *Hartford Accident & Indemnity Co.* v. *Abdullah, supra,* on which plaintiffs heavily rely and which involved entrustment of the dealer's vehicle to the unlicensed driver so that he could test drive it, see *Murray* v. *Wright* (1958) 166 Cal.App.2d 589, 592 [333 P.2d 111] [dealer left keys in cars on lot to encourage test driving]; *Syah* v. *Johnson*

(1966) 247 Cal.App.2d 534, 545 [55 Cal.Rptr. 741] [employee hired to drive customer's cars]; *McIntire* v. *Sellers* (Tex.Civ.App. 1958) 311 S.W.2d 886, 890-892 [entrustment by owner]; *McCalla* v. *Grosse* (1941) 42 Cal.App.2d 546, 550 [109 P.2d 358] [permissive use]; *Hughes* v. *Wardwell* (1953) 117 Cal.App.2d 406, 409 [255 P.2d 881] [allowing incompetent minor to drive]; *Vice* v. *Automobile Club of So. Cal.* (1966) 241 Cal.App.2d 759, 766 [50 Cal.Rptr. 837] [issue whether defendant's negligence or driver's negligence must be shown].) Plaintiffs also cite language from Prosser stating that the risk created is the negligent entrusting, which is no less when goods are conveyed. (Prosser, The Law of Torts (4th ed. 1971) pp. 678-679.) But the cases do not support imposition of liability for negligent entrustment in an ordinary commercial sale, and the discussion of negligent entrustment in the more recent edition of Prosser and Keeton on Torts analyzes the imposition of liability for negligent entrustment in the same manner as is generally used to decide whether a duty should be imposed to anticipate and guard against the negligence of others. The authors conclude that such duty is not normally imposed absent a special relationship between the parties or the knowledge of particular facts making clear the danger in entrusting the instrumentality to the individual involved. (See Prosser & Keeton, Torts (5th ed. 1984) ch. 5, § 33, pp. 197-205.) These principles are identical to those which generally govern the tort of negligent entrustment, positing liability on surrendering control of a potentially dangerous instrument to one who the owner knows or should know is likely to misuse it. (See discussion of the Rest.2d Torts, *supra*, § 390.)

■ In any case, the tort requires demonstration of actual knowledge of facts showing or suggesting the driver's incompetence—not merely his lack of a license. (See generally *Richards* v. *Stanley* (1954) 43 Cal.2d 60, 65 [271 P.2d 23]; and for the proposition that lack of a license does not demonstrate negligence of the driver per se, see, e.g., *Perry* v. *Simeone* (1925) 197 Cal. 132, 135 [239 P. 1056]; *Shmatovich* v. *New Sonoma Creamery* (1960) 187 Cal.App.2d 342, 344 [9 Cal.Rptr. 630], disapproved on another point in *Prichard* v. *Veterans Cab Co.* (1965) 63 Cal.2d 727, 732 [47 Cal.Rptr. 904, 408 P.2d 360]; *Wysock* v. *Borcher Bros.* (1951) 104 Cal.App.2d 571, 582-583 [232 P.2d 531, 29 A.L.R.2d 948].)[3] For liability to exist, knowledge must be shown of the user's incompetence or inability safely to use the chattel. Here there is no tender of any proof suggesting the required knowledge may be imputed to Dodge.

---

[3] The fact that the driver is unlicensed makes a prima facie case of negligence in allowing him to drive the vehicle. (4 Witkin, Summary of Cal. Law (8th ed. 1974) § 650, p. 2930; *Owens* v. *Carmichael's U-Drive Autos, Inc., supra,* 116 Cal.App. 348, 352; *Shifflette* v. *Walk-up Drayage Etc. Co.* (1946) 74 Cal.App.2d 903, 907 [169 P.2d 996]; *Nault* v. *Smith* (1961) 194 Cal.App.2d 257, 267 [14 Cal.Rptr. 889].)

■ To impose on Dodge, under these circumstances, a duty of inquiry as to the purchaser's driver's license status, would not only be without precedent, but would also violate the general principle that it may be presumed that every person will obey the law. (See generally *Leo* v. *Dunham* (1953) 41 Cal.2d 712, 715 [264 P.2d 1]; *Tucker* v. *Lombardo* (1956) 47 Cal.2d 457, 467 [303 P.2d 1041]; see also *Richards* v. *Stanley, supra,* 43 Cal.2d at p. 66 [except in certain special circumstances, one is normally entitled to rely on third parties with whom one deals to discharge their responsibilities with reasonable care].) It follows that a retail seller of motor vehicles may normally assume that a purchaser is either legally entitled to drive the vehicle, or alternatively, if not himself qualified to drive, will not do so, but rather will arrange for a legally qualified driver's services. Here, since Adams did take possession of the vehicle immediately upon purchase to drive it himself, Dodge was entitled to assume that Adams was legally entitled to do so.

As Dodge points out, the Legislature could readily have imposed a duty of inquiry upon motor vehicle sellers, as it did, for example, upon those who rent motor vehicles, in section 14608. Sections 14606 and 14608 were enacted during the same legislative session as part of the same statute. (See Stats. 1959, ch. 3, p. 1634.) Since that time, section 14606 has been amended three times, but no language has been inserted requiring a seller to examine the purchaser's license. (See Stats. 1961, ch. 1615, § 31, p. 3458; Stats. 1963, ch. 140, § 3, p. 813; Stats. 1971, ch. 1279, § 3, p. 2509.)

We conclude that Dodge owed no legal duty to plaintiffs to inquire into Adams's driving record before selling him a vehicle. ■ Nor do the declarations disclose any facts known to Dodge through its employees which would have put it on inquiry notice regarding Adams's ability to drive. Further, the only entrustment which occurred here was the dealer's permitting Adams to drive the vehicle the short distance to his stepbrother's home to sign the papers; there is no evidence connecting plaintiffs' injuries with that brief period of entrustment before the sale. Accordingly there is no basis to hold the dealership liable for plaintiffs' damages, and summary judgment should have been granted in its favor.

### DISPOSITION

Real parties in interest have been notified that a peremptory writ in the first instance could be issued here, and they have filed opposition. The peremptory writ of mandate will issue in the first instance. (Code Civ. Proc., § 1088; *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-182 [203 Cal.Rptr. 626, 681 P.2d 893].)

Let a peremptory writ of mandate issue as prayed, directing the respondent court to vacate its order granting partial summary adjudication to real parties and denying Dodge's motion for summary adjudication, and instead to make a new and different order granting the motion of petitioner Dodge for summary judgment. As the prevailing party, Dodge shall have costs in this proceeding.

Agliano, P. J., and Zecher, J.,* concurred.

A petition for a rehearing was denied March 22, 1988, and the petition of real parties in interest for review by the Supreme Court was denied May 19, 1988.

---

* Assigned by the Chairperson of the Judicial Council.