2015 COA 145

Camell BEASLEY, Plaintiff–Appellant,

v.

BEST CAR BUYS, LTD, Defendant–Appellee.

Court of Appeals No. 14CA2026

Colorado Court of Appeals, Div. III.

Announced October 8, 2015

Bachus & Schanker, LLC, David W. Krivit, Denver, Colorado, for Plaintiff–Appellant.

White and Steele P.C., James M. Dieterich, Denver, Colorado, for Defendant–Appellee.

Opinion by JUDGE FOX

¶ 1 In this civil negligence dispute, Camell Beasley appeals from the district court's grant of summary judgment in favor of Best Car Buys, LTD (BCB). As an issue of first impression in Colorado, we address whether car vendors have a legal duty to inquire into a buyer's driving history before selling him a car. We conclude that no such duty exists, and we affirm.

## I. Background

¶ 2 The following facts are undisputed.

¶ 3 BCB sold a car to Peter Reynoso and Erica Yancey, who were co-signatories on the sales contract. At the time of sale, Reynoso presented BCB with a Colorado identification card and Yancey presented a valid Colorado driver's license. Eight days later, Reynoso, who was driving the newly purchased car, struck Beasley, who was driving a motorcycle. Beasley suffered injuries from the accident.

¶ 4 Beasley sued BCB [1] for negligence and negligent entrustment, claiming that BCB negligently sold a car to Reynoso, who "did not have a driver's license" and who "was not a safe driver." [2] BCB moved for summary judgment, arguing that there was no evidence BCB knew or had reason to know that Reynoso was likely to use the car in a risky manner, and that BCB had no duty to investigate Reynoso's driving history. Over Beasley's opposition, the district granted summary judgment in BCB's favor.

## II. Standard of Review

¶ 5 We review de novo a trial court's grant of summary judgment. *Shelter Mut. Ins. Co. v. Mid–Century Ins. Co.*, 246 P.3d 651, 657 (Colo.2011). Summary judgment is appropriate when the pleadings and supporting documents demonstrate that there is no genuine issue of material fact and that one party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Natural Energy Res. Co. v. Upper Gunnison River Water Conservancy Dist.*, 142 P.3d 1265, 1276 (Colo.2006). We view all facts in the light most favorable to the nonmoving party. *Tapley v. Golden Big O Tires*, 676 P.2d 676, 678 (Colo.1983).

## III. Negligence and Negligent Entrustment

¶ 6 Beasley contends that the district court erred in concluding that there was no evidence to support his negligence and negligent entrustment claims. These claims were premised on the same act—BCB's alleged negligence in selling, or entrusting, a car to Reynoso. Beasley first contends that this act was negligent because BCB had a duty to inquire into Reynoso's driving history and breached that duty when it did not so inquire. Second, Beasley contends that the sale was negligent because BCB had reason to know, based solely on Reynoso's lack of a license, that Reynoso would use the car in a

manner likely to cause harm. Without proof of licensure, Beasley contends, BCB had a duty not to sell the car to Reynoso. Because the record fails to disclose any disputed issues of material fact with regard to these contentions and because Beasley's contentions are legally untenable, we agree with the district court's decision to grant summary judgment in BCB's favor.

### A. Legal Principles

¶ 7 To recover for the negligent conduct of another, a plaintiff must establish the existence of a duty owed by a defendant and a breach of that duty, which actually and proximately caused injury to the plaintiff. *Casebolt v. Cowan*, 829 P.2d 352, 356 (Colo. 1992). A principal element of any negligence claim—and the primary issue in this case—is whether, as a matter of law, a duty existed. *Id.* at 355–56.

¶ 8 The negligent entrustment doctrine, which "is part of the law of negligence in this state," *id.* at 357, articulates a set of standards that, if met, establish the duty element of negligence, *Peterson v. Halsted*, 829 P.2d 373, 378 (Colo.1992).

¶ 9 The doctrine provides:

> One who supplies ... chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others ... is subject to liability for physical harm resulting to them.

Restatement (Second) of Torts § 390 (1965) (hereinafter Restatement); *see Casebolt*, 829 P.2d at 355–63 (adopting Restatement section 390 as providing the framework to analyze the negligent entrustment of a motor vehicle); *see also Liebelt v. Bob Penkus Volvo–Mazda, Inc.*, 961 P.2d 1147, 1149 (Colo. App.1998) (stating that liability for negligent

---

**1.** Beasley also named Reynoso and Yancey as defendants. Beasley later settled with each of them. The settlements included dismissal of all claims with prejudice, and neither Reynoso nor Yancey is a party to this appeal.

**2.** Beasley also asserted that BCB acted negligently in failing to verify Reynoso's car insurance

before selling him the car. However, because Beasley does not raise this issue on appeal, we need not address it. *See Moody v. People*, 159 P.3d 611, 614 (Colo.2007) ("'[A]rguments not advanced on appeal are generally deemed waived.'").

entrustment of an automobile depends on whether the supplier knew or had reason to know the likelihood of harm).

¶ 10 A supplier has "reason to know" that a person is likely to use the chattel in a manner involving unreasonable risk of physical harm, and therefore a duty not to facilitate such use, when

> the actor has information from which a person of reasonable intelligence or of the superior intelligence of the actor would infer that the fact in question exists, or that such person would govern his conduct upon the assumption that such fact exists.

Restatement § 12. The "reason to know" standard does not impose a duty upon the supplier to ascertain unknown facts. *Id.* at cmt. a; *see Liebelt,* 961 P.2d at 1149 (explaining that while " 'should know' creates a duty to use reasonable diligence to ascertain the existence or non-existence of the fact in question," the phrase "reason to know" does not).

■ ¶ 11 Other factors used to determine the existence of a duty include "the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the [defendant's] conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden upon the [defendant]." *Casebolt,* 829 P.2d at 356. No one factor is controlling, and whether "a duty should be imposed in a particular case is essentially one of fairness under contemporary standards." *Taco Bell, Inc. v. Lannon,* 744 P.2d 43, 46 (Colo.1987).

¶ 12 Affording Beasley all favorable inferences, we apply these principles of negligence and negligent entrustment to determine whether the district court erred in summarily dismissing Beasley's claims.

### B. Duty to Investigate a Buyer's Driving History

[4] ¶ 13 Beasley claimed that BCB negligently sold the car to Reynoso because BCB

had a duty to investigate Reynoso's driving history[3] and declined to do so. In granting summary judgment, the district court reasoned that "there is no legal requirement for automobile dealerships to conduct a search of a buyer's driving history or to inquire as to the status of the buyer's driver's license." The court then declined to impose such a requirement in part because it "would be contrary to public policy considerations set forth in *Liebelt*[,] 961 P.2d at 1149."

¶ 14 We agree with the district court. We cannot find, and Beasley does not cite to, any Colorado case that has expressly held that a car vendor has a duty to inquire into a buyer's driving history or to investigate the status of his license, particularly when that vendor has no reason to believe that the purchaser has dangerous driving habits. Indeed, decisions from other divisions of this court suggest otherwise. In *Baker v. Bratrsovsky,* 689 P.2d 722, 723–24 (Colo.App. 1984), the division concluded that the car vendor, who sold a seemingly inoperable car, had no actual knowledge of the plaintiff's driving record and *no duty to investigate it.*

¶ 15 In *Liebelt,* 961 P.2d at 1148–49, the division addressed whether car vendors have a duty to investigate (1) whether the purchaser of a car is to be the driver and (2) the status of a driver's insurance before completing the sale. Analyzing the factors of duty under general negligence principles, the division decided against imposing such a duty. *Id.* The division reasoned that lack of insurance is not tantamount to incompetency; the seller's duty of inquiry would not necessarily be limited to the purchaser, raising questions about the precise circumstances in which the duty would apply; the utility of recognizing such a duty had not been demonstrated and could not be assumed; and imposing the duty could impact commerce. *Id.* at 1149.

¶ 16 Like the *Liebelt* division, we see no utility in imposing a duty on sellers to inquire into every vehicle purchaser's driving

---

**3.** Beasley refers to Reynoso as a "habitual traffic offender." The district court's summary judgment order also states that Reynoso was a "habitual traffic offender." However, the court made no findings about Reynoso's driving record or any specific accident history. Because the record does not contain any evidence of Reyno-

so's driving history, we cannot address or consider that history on appeal. *See Colby v. Progressive Cas. Ins. Co.,* 928 P.2d 1298, 1301 (Colo. 1996) ("Issues not decided by the lower court may not be addressed for the first time on appeal.").

history. Such a duty would have practical and economic consequences for car suppliers, as the inquiry might not stop with the vehicle purchaser. It could extend to all potential drivers of a vehicle, raising uncertainty as to the precise circumstances in which this duty would arise and how it would comport with the holding in *Liebelt*. *See id.* at 1148–49 (concluding, in part, that a dealership has no duty to inquire into whether the purchaser of the car is to be the driver); *see also Vic Potamkin Chevrolet, Inc. v. Horne*, 505 So.2d 560, 563 (Fla.Dist.Ct.App.1987) ("We think it sufficient for a dealer prior to delivery of a car to determine that *a buyer* has a valid license. We think it inappropriate to further burden car dealers with an additional obligation of determining that every customer [or future user] is a safe driver.") (emphasis added). Moreover, this inquiry and the purchaser's later (and potential) use of the vehicle could have minimal correlation. *See, e.g., Peterson*, 829 P.2d at 378 (noting the attenuated connection between a car owner's knowledge of a driver's dangerous driving habits, including alcohol use, and the accident that occurred years later).

¶ 17 In addition, the imposition of such a duty would be contrary to the plain language of Restatement sections 12 and 390, under which suppliers of motor vehicles have no duty to ascertain unknown facts. *See* Restatement § 12 cmt. a (explaining that "reason to know[,]" as used in Restatement section 390, "implies no duty of knowledge on the part of the actor whereas 'should know' implies that the actor owes another the duty of ascertaining the fact in question"); *see also Casebolt*, 829 P.2d at 357. Imposing a legal duty on car vendors, particularly one that has not previously been recognized, is better left to the legislative process. *See Nunez v. A & M Rentals, Inc.*, 63 Mass.App. Ct. 20, 822 N.E.2d 743, 747–48 (Mass.App.Ct. 2005).

¶ 18 Numerous other jurisdictions have also declined an invitation to create the duty urged by Beasley. *See, e.g., Dodge Ctr. v. Superior Court*, 199 Cal.App.3d 332, 244 Cal. Rptr. 789, 795 (1988) (concluding that a car dealership "owed no legal duty to plaintiffs to inquire into [a purchaser's] driving record before selling him a vehicle"); *Evans v. Shannon*, 201 Ill.2d 424, 267 Ill.Dec. 533, 776 N.E.2d 1184, 1191 (2002) (holding that a car detailer had no duty to inquire as to a driver's license status or background when the detailer "neither knew, nor had reason to know" that the employee would use the car in a manner involving an unreasonable risk of harm to others); *Nunez*, 822 N.E.2d at 747–48 (declining to impose a duty on a car dealership to verify the status of a purchaser's license and stating that it is within the province of the legislature to do so); *Johnson v. Johnson*, 611 N.W.2d 823, 826 (Minn.Ct. App.2000) ("[T]here is no basis for requiring sellers who check purchasers' license status to check the license status of prospective drivers as well."); *Laurel Yamaha, Inc. v. Freeman*, 956 So.2d 897, 904 (Miss.2007) (recognizing no Mississippi law that imposes a duty on a seller to restrict motor vehicle sales to licensed drivers or to determine the competence of drivers as part of the sale and declining to impose such duty); *Sikora v. Wade*, 135 N.J.Super. 62, 342 A.2d 580, 582 (Law Div.1975) (discussing the negative public policy implications in imposing upon car vendors the duty to inquire into a car purchaser's driving ability and concluding that such an imposition "would unduly hamper commerce and would pose an undue burden on ordinary business relationships").

¶ 19 Accordingly, we conclude that, under these circumstances, BCB had no duty to inquire into or investigate Reynoso's driving history. Because a negligence claim cannot succeed without a showing that a duty existed, *Walcott v. Total Petroleum, Inc.*, 964 P.2d 609, 610 (Colo.App.1998), we agree with the district court's resolution of this issue.

### C. Absence of a License

¶ 20 Beasley also contended that BCB negligently entrusted the car to Reynoso without requiring that he present a valid driver's license.

¶ 21 To find negligence here, Restatement section 390 requires a determination that BCB had (1) actual knowledge or (2) a reason to know that, in entrusting the car to Reynoso, there was a likelihood that he would use the car in a manner likely to cause harm.

*See Liebelt,* 961 P.2d at 1149. We agree with the district court that the record contains insufficient evidence to support either determination.

¶ 22 First, Beasley concedes, and the record reflects, that BCB did not have actual knowledge that Reynoso would use the vehicle in a manner likely to cause harm. At the time of the car sale, BCB did not know why Reynoso lacked a license, nor was BCB aware of Reynoso's driving history, and BCB had no duty to ascertain or to investigate either. *See* Restatement § 12 cmt. a; *see also Liebelt,* 961 P.2d at 1149; *but see Schneider v. Midtown Motor Co.,* 854 P.2d 1322, 1324 (Colo.App.1992) (reversing a district court's grant of summary judgment because conflicting evidence existed as to whether the dealership knew or had reason to know about the driver's dangerous driving habits because, at the time of sale, the driver was unlicensed, an agent described him as a crazy driver, and the dealership observed him "spinning the tires and driving like a wild man").

■ ¶ 23 Second, we cannot conclude that BCB "had reason to know" that Reynoso would use the car in a manner likely to cause harm, and thus had a duty to deny the sale, merely because Reynoso did not present a valid driver's license. While we agree with Beasley that lack of a license might signify a driver's incompetence, we disagree that the absence of a license necessarily means this. *See, e.g., Lathe v. Dep't of Revenue, Motor Vehicle Div.,* 691 P.2d 356, 356 (Colo.App. 1984) (the plaintiff's driver's license was suspended for failing to notify the Department of Revenue of his change of address). Lack of a license could mean a number of things aside from a potential for dangerous driving—for example, that the customer lost it or that he has not yet acquired one due to recently moving to the state. And again, under Restatement section 390, BCB had no duty to inquire into why Reynoso did not produce a license. *See* Restatement § 12 cmt a. There is also no evidence in the record suggesting that BCB had any reason to know, assume, or infer that Reynoso did not have a license *because of* a dangerous driving history.

¶ 24 As Beasley contends, however, some courts have considered the lack of a license to be a factor in determining the liability of a vehicle vendor or donor who has entrusted the vehicle to a dangerous driver. *See Hertz Driv–Ur–Self Sys. v. Henrickson,* 109 Colo. 1, 3–5, 121 P.2d 483, 484 (1942); *Draper v. DeFrenchi–Gordineer,* 282 P.3d 489, 499 (Colo.App.2011). However, none of these courts has concluded that the absence of a license is dispositive. Other evidence of a donor's or vendor's knowledge of the driver's dangerous tendencies is required. *See Hertz Driv–Ur–Self Sys.,* 109 Colo. at 3–5, 121 P.2d at 484 (concluding that merely leasing a car to an unlicensed driver without reason to believe that the driver is dangerous did not create liability); *Draper,* 282 P.3d at 499 (reversing a trial court's grant of summary judgment because disputed facts existed as to whether the car donor had reason to know the status of the driver's permit and her lack of driving experience).

¶ 25 Here, we have no additional evidence that BCB knew or had reason to know of Reynoso's potential for dangerous driving. The summary judgment record does not suggest that anyone at BCB observed Reynoso driving dangerously, nor does Beasley contend this. No evidence was presented that anyone told BCB agents that Reynoso was an incompetent or inexperienced driver. Without additional evidence, aside from an absent license, suggesting the BCB "had reason to know" about Reynoso's driving behaviors, we cannot conclude that a disputed issue of material fact existed as to whether BCB negligently sold him the car.

¶ 26 Citing various out-of-state cases—*Kinney v. Smith,* 95 Idaho 328, 508 P.2d 1234, 1237 (1973); *Seward v. Griffin,* 116 Ill.App.3d 749, 72 Ill.Dec. 305, 452 N.E.2d 558, 563 (1983); and *Barnes v. Zinda,* 464 S.W.2d 501, 504 (Tex.Civ.App.1971)—and one Colorado case—*Draper,* 282 P.3d at 498–99— Beasley urges us to conclude otherwise. We decline to do so, however, because all the cited cases are inapposite.

¶ 27 None of the out-of-state cases interprets Restatement section 390 or the phrase "reason to know[,]" which govern our review of the issue. *See Kinney,* 508 P.2d at 1237

(interpreting section 49–339 of the Idaho Code, which requires car owners to check a driver's license before lending their cars); *Seward*, 72 Ill.Dec. 305, 452 N.E.2d at 563 (reviewing a negligent entrustment claim under general negligence principles); *Barnes*, 464 S.W.2d at 504 (reviewing a negligence per se claim under Texas Code article 6687b, section 36). Those cases do not aid us in interpreting or applying the particular standard applicable here. And, other jurisdictions that have applied Restatement section 390, and the "reason to know" standard, agree that a driver's unlicensed status is insufficient to conclude, on that basis alone, that a car seller (or donor) had reason to know about that driver's incompetence or had a duty to prevent the sale. *See, e.g., Dodge Ctr.*, 244 Cal.Rptr. at 794 ("[T]he tort [of negligent entrustment] requires demonstration of actual knowledge of facts showing or suggesting the driver's incompetence—not merely his lack of a license."); *Sikora*, 342 A.2d at 581–83 (rejecting the rule that a donor may be liable for a donee's negligent operation of a vehicle when the donor gave the vehicle without knowledge of the donee's incompetence or license status). Moreover, each out-of-state case that Beasley cites concerns entrustment by a car's owner or dealer to a single unlicensed driver, not, as here, to co-purchasers—one of whom provided a valid driver's license.

¶ 28 Additionally, Beasley's reliance on *Draper*, 282 P.3d at 499, is misplaced. In reversing a trial court's grant of summary judgment, the *Draper* division analyzed Restatement sections 308 and 390, but in doing so the division appears to have conflated the "should know" and "reason to know" standards. *See id.* (stating that specific knowledge is not required if the car's donor "had reason to know" that the driver was likely to use the car unreasonably but then concluding that whether the donor "knew, or *should have known*" that the driver was unsafe remained in dispute) (emphasis added); *but see*

*Liebelt*, 961 P.2d at 1149 (explaining the pivotal difference between the "should know" and "reason to know" standards in negligent entrustment jurisprudence). Whether the car donor had actual knowledge of the driver's driving history or experience remained a disputed issue of material fact in *Draper*, thus precluding summary judgment on the claim. Here, in contrast, neither party disputes that BCB did not have actual knowledge of such information.

▮ ¶ 29 Even if lack of a license was sufficient to infer that a motor vehicle supplier had reason to know of a driver's dangerous habits and therefore a duty to decline the sale, it would not be sufficient here. The record clearly reflects that Yancey, the car's co-purchaser, provided BCB with a valid license. A supplier of cars is not required to verify for whom the car is purchased or who will be driving off the lot. *See Liebelt*, 961 P.2d at 1148.[4]

¶ 30 We therefore conclude that, under these circumstances, the absence of Reynoso's driver's license, without more, was insufficient to conclude that BCB knew or had reason to know that he would use the car in a manner likely to cause harm. Accordingly, we agree with the district court's resolution of this issue.

### IV.   Negligence Per Se

▮ ¶ 31 Beasley now contends that BCB had a statutory duty under section 42–2–140, C.R.S.2015, to ensure that Reynoso was properly licensed and not incompetent to drive before selling him a car. Beasley cites *Schneider*, 854 P.2d at 1326, as support for the proposition that a violation of section 42–2–140 "may, in some instances, constitute negligence." To the extent that Beasley urges us to find error in the court's grant of summary judgment under a theory of negligence per se for a violation of section 42–2–140, we decline to do so because Beasley did not raise this argument in the district court and the district court did not reach the issue.

---

4. Relying on information contained in an affidavit of Benjamin Hartford, Beasley alleges that Reynoso drove the car off the lot and that BCB was aware that he planned to do so. However, Beasley did not present, or otherwise rely on, this information in his summary judgment response below. Because the information in the affidavit was not at issue before the district court, it is not properly before us on appeal. We therefore do not address or consider it. *See Colby*, 928 P.2d at 1301. And we express no opinion about what the result may have been had the affidavit been properly before the court.

See *Draper*, 282 P.3d at 498 (declining to address a matter on appeal that was not reached by the trial court); *Forrest v. Lorrigan*, 833 P.2d 873, 875 (Colo.App.1992) (same).

¶ 32 In any event, Reynoso's co-purchaser, Yancey, presented a valid driver's license when purchasing the vehicle, rendering section 42–2–140 inapplicable. *See Schneider*, 854 P.2d at 1325 (applying the statute to a situation where *one unlicensed driver* purchased a vehicle). And, nothing in this statute requires suppliers to also investigate a car purchaser's driving history. Had the legislature wanted to include such a requirement, it could have done so. *Springer v. City & Cnty. of Denver*, 13 P.3d 794, 804 (Colo.2000) ("Where the legislature could have chosen to restrict the application of a statute, but chose not to, we do not read additional restrictions into the statute.").

## V. Conclusion

¶ 33 Affording Beasley all favorable inferences, *see Tapley*, 676 P.2d at 678, we conclude that the district court did not err in granting summary judgment in BCB's favor as to Beasley's negligence and negligent entrustment claims. Thus, the district court's judgment is affirmed.

JUDGE WEBB and JUDGE BERGER concur.