Robert DRAPER, Plaintiff–Appellant,

v.

Christie DeFRENCHI–GORDINEER, John Nelson, Gregory Nelson, and Cynthia Nelson, Defendants–Appellees.

No. 10CA1316.

Colorado Court of Appeals, Div. IV.

Sept. 1, 2011.

James Grimaldi, Denver, Colorado, for Plaintiff–Appellant.

Patterson, Nuss & Seymour, P.C., Theresa W. Seymour, Greenwood Village, Colorado, for Defendant–Appellee Christie DeFrenchi–Gordineer.

Jones, Waters & Geislinger, L.L.C., Dawn R. Kubik, Colorado Springs, Colorado, for Defendants–Appellees John Nelson, Gregory Nelson, and Cynthia Nelson.

Opinion by Judge BERNARD.

This appeal concerns an order granting summary judgment in a case in which a man's wife was seriously injured. The husband filed suit, raising several tort claims. The trial court granted summary judgment against husband on all of them. We reverse and remand.

To resolve the first part of this appeal, we must answer questions concerning the intersection of the concepts of derivative claims, separate claims, and settlement agreements. Are claims for loss of consortium and negligent infliction of emotional distress derivative claims or independent claims? If they are derivative claims, are they also separate claims? What effect does an agreement settling the claims of an injured person have on a spouse's separate, derivative claim, or on a spouse's independent claim?

We arrive at the following answers. A claim for loss of consortium is a derivative claim, but it is also a separate claim that creates a distinct cause of action. Therefore, an agreement settling an injured person's personal injury claims does not necessarily bar the spouse's loss of consortium claim.

The claim of negligent infliction of emotional distress is an independent claim, not a derivative claim. Thus, an agreement settling the claims of an injured person does not necessarily bar the spouse's claim for negligent infliction of emotional distress.

We must also decide two other issues. We conclude, under the circumstances here, that

- the amendment of husband's complaint, after the statute of limitations had run, to include an additional allegation that defendants' negligence caused him bodily injury, related back to the original complaint; and

- husband's claim of negligent entrustment of an automobile raises a question of material fact.

## I. Background

On June 12, 2005, Gregory and Cynthia Nelson loaned their pickup truck to their nineteen-year-old son, John. John, in turn, allowed his friend, Christie DeFrenchi–Gordineer, to drive it. The friend was over eighteen years old.

The friend did not have a driver's license. The record is not entirely clear whether (1) she had been issued a learner's permit that allowed her to drive only while supervised by a parent, a guardian, or a designated person who was at least twenty-one years old; or (2) she previously had obtained a permit, but it had expired.

The friend drove the truck in downtown Colorado Springs. The son sat next to her in the truck's front seat.

At the same time, husband, Robert Draper, and his wife, Jean, were removing their children, an infant and a toddler, from opposite sides of their parked Jeep in downtown Colorado Springs. Husband testified at a deposition that he saw the truck approaching the Jeep in the lane closest to him. He decided to wait to remove the infant from the Jeep until the truck had passed.

The son and his friend looked for a place to park the truck. The son, apparently concerned that his friend was driving too fast, attempted to step on the brake pedal from his position next to the friend. He instead stepped on the accelerator.

According to husband's deposition, the truck angled toward the Jeep, its engine "roaring." He yanked the infant from the Jeep. As he did so, the truck struck the Jeep from behind, "sh[ooting] through the back of" it.

The truck struck wife. She was severely injured, and part of her leg had to be amputated.

Husband and wife signed a settlement agreement releasing wife's claims against the parents, the son, and the friend. Husband subsequently filed suit naming all four as defendants. The suit raised three tort claims: loss of consortium; negligent infliction of emotional distress; and negligent entrustment. With the trial court's permission, he later amended his complaint to include claims for bodily injury.

The trial court granted summary judgment in favor of defendants on all of husband's claims. The court concluded that

- the claims for loss of consortium and negligent infliction of emotional distress were derivative of wife's personal injury claims, and, as result, husband had waived them by signing the settlement agreement;

- the claim that husband suffered bodily injury was barred by the statute of limitations; and

- there was no material question of fact whether the parents had negligently entrusted their car to their son.

## II. Analysis

### A. Standard of Review

We review a grant of summary judgment de novo. *Murry v. GuideOne Specialty Mut. Ins. Co.*, 194 P.3d 489, 491 (Colo.App.2008). Summary judgment is a drastic remedy that should be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." C.R.C.P. 56(c); *Murry*, 194 P.3d at 491.

"In determining whether summary judgment is proper, the nonmoving party is entitled to the benefit of all favorable inferences that may reasonably be drawn from the undisputed facts, and all doubts must be resolved against the moving party." *Casebolt v. Cowan*, 829 P.2d 352, 354 (Colo.1992).

### B. The Release

 We interpret a settlement agreement using common law contract principles. *Yaekle v. Andrews*, 195 P.3d 1101, 1107 (Colo.2008). Contract interpretation is a question of law we review de novo. *Ad Two,*

**494**

*Inc. v. City & County of Denver,* 9 P.3d 373, 376 (Colo.2000). The primary goal of contract interpretation is to give effect to the intent of the parties, which is to be determined primarily from the language of the agreement itself. *Id.* We construe the language "in harmony with the plain and generally accepted meaning of the words employed." *Id.*

As relevant here, the settlement agreement states:

- "[Wife] has asserted claims against [defendants].... The parties desire to settle the claim[s]."
- "[Wife] releases [defendants]...."
- "[Wife] represents and warrants that she has made no assignment of the injury claims released herein and that she has the sole and exclusive right to compromise, settle, and release same."
- "[Wife] has represented to [defendants] and their insurers that no other person or entity has a lien upon or interest in the settlement proceeds."
- "[Wife] admits that she may have incomplete or incorrect information and therefore may be wrong about [h]ow much she would recover from [defendants and whether she] now [has] or will have in the future other damages and other losses regarding her injury claims."
- "[Wife] is entering into this settlement because she is willing to assume entirely on her own the risk that she is wrong about the amount she might be able to recover for her injury claims."
- "This [r]elease completely sets forth the settlement of [wife's] injur[y] claims. No other promises have been made to [wife] by [defendants]. [Wife] is not relying on any statement made by [defendants] or by anyone acting on their behalf. [Wife] knows and accepts the fact that she will never be able to assert her claims or sue on [them] again. [Wife] knows and accepts the fact that [defendants] deny all liability to her."

The settlement agreement repeatedly and unambiguously refers only to wife's claims. For example, it releases defendants from liability for "[wife's] injury claim" and claims for "[wife's] damages and losses." Further, it does not mention any claims that husband may have had; it does not state that husband releases any claims; and it does not refer to any consideration that husband is to receive.

■ Husband and wife signed this agreement. Defendants contend that, by signing it, husband waived his claims. After conducting our de novo review, we disagree.

The release states that it "binds [wife] and all other individuals ... who are connected with her or have any interest in her injury claim including heirs." When reading the document as a whole, we conclude that husband's signature is present on the document because he was "connected with [wife]"; he may have had an "interest in her injury claim"; and he was her "heir." That husband satisfied these criteria does not mean that he waived *his* claims by signing the release. Rather, husband's signature indicated that he would no longer be able to pursue *wife's* claims.

We therefore conclude that the settlement agreement does not expressly release defendants from liability for any claims in husband's lawsuit.

However, we must still determine whether the agreement bars husband's loss of consortium and negligent infliction of emotional distress claims based on the argument that they are derivative of wife's claims. Defendants contend that the settlement agreement bars husband's derivative claims because (1) wife clearly released her claims; (2) husband's signature indicates that he understood the terms of the release; and (3) the release stated that it bound "all other individuals ... who are connected with [wife] or have any interest in her injury claim including heirs."

## C. Loss of Consortium

The trial court's determination that husband's claim for loss of consortium is derivative of wife's personal injury claim is a legal conclusion that we review de novo. *E–470 Pub. Highway Auth. v. 455 Co.,* 3 P.3d 18, 22 (Colo.2000).

■ "Derivative claims are unique in that they depend entirely upon the right of

the injured person to recover." *Colorado Compensation Ins. Authority v. Jorgensen*, 992 P.2d 1156, 1164 (Colo.2000). Generally, loss of consortium is a derivative claim, but it also constitutes a separate injury. *Lee v. Colorado Dep't of Health*, 718 P.2d 221, 230 (Colo.1986); *see also Welch v. George*, 19 P.3d 675, 678 (Colo.2000) ("a loss of consortium claim is derivative for the purposes of no-fault insurance"); *but see Williams v. State Farm Mut. Auto. Ins. Co.*, 195 P.3d 1158, 1160 (Colo.App.2008)(citing *Swan v. Farmers Ins. Exchange*, 140 P.3d 261, 265 (Colo.App.2006), for the proposition that loss of consortium is a separate, rather than a derivative, claim). As a separate claim, it creates "a distinct cause of action." *Terry v. Sullivan*, 58 P.3d 1098, 1102 (Colo.App.2002).

 As a derivative claim, loss of consortium is subject to the same defenses available to the "underlying claim." *Id.* If an injured person's claim is barred by statute, a loss of consortium claim by the injured person's spouse is also barred. *Schwindt v. Hershey Foods Corp.*, 81 P.3d 1144, 1148 (Colo.App.2003). A derivative claim "is destroyed" if the underlying personal injury claim is unsuccessful on the merits. *Kinsella v. Farmers Ins. Exchange*, 826 P.2d 433, 435 (Colo.App.1992). In other words, if an injured person's claim fails on substantive grounds, the spouse's claim for loss of consortium will also fail. *See, e.g., Schwindt*, 81 P.3d at 1148; *Covert v. Allen Group, Inc.*, 597 F.Supp. 1268, 1269–70 (D.Colo.1984).

 The classification of loss of consortium as a separate claim is important to our analysis. For example, separate derivative claims do not have to be pursued in connection with the claims of the injured person, *see Elgin v. Bartlett*, 994 P.2d 411, 417 (Colo. 1999), which leads to the conclusion that circumstances tolling the statute of limitations for the injured person do not toll the statute of limitations for a spouse pursuing a separate derivative claim. *Id.; accord Terry*, 58 P.3d at 1102.

 Under a statute establishing a ceiling on the amount of recovery for an injury to two or more persons, a spouse pursuing a derivative loss of consortium claim has a "right of recovery" separate from that of the injured person. *Lee*, 718 P.2d at 230 (applying Governmental Immunity Act, § 24–10–114, C.R.S.2010). Thus, under *Lee*, "each plaintiff bringing a loss of consortium claim is subject to a separate ... damages cap under [the Colorado Governmental Immunity Act] because a loss of consortium claim is a tort separate from the underlying negligence action." *Steedle v. Sereff*, 167 P.3d 135, 140 (Colo.2007).

 This important conclusion extends to settlement agreements. Although loss of consortium is a derivative claim, its status as a separate claim means that an injured person may settle his or her claims without affecting the spouse's loss of consortium claim. In *Crouch v. West*, 29 Colo.App. 72, 75, 477 P.2d 805, 806 (1970), the division held that a wife was entitled to raise loss of consortium as a separate claim, and that "it could have been and was validly separated from the pretrial settlement of the husband's claim for his personal injuries."

In *Barker v. Colorado Region–Sports Car Club of America, Inc.*, 35 Colo.App. 73, 81–82, 532 P.2d 372, 378 (1974), the division held that an exculpatory agreement signed by an injured person had no effect on the spouse's claim for loss of consortium.

In *Rains v. Kolberg Manufacturing Corp.*, 897 P.2d 845, 847 (Colo.App.1994), the division analyzed a workers' compensation statute that gave insurers, who had paid an injured worker benefits, a subrogation interest in any recovery the worker received from a negligent third party. The division considered the effect of this statute on a settlement agreement between an injured worker's spouse, who raised a loss of consortium claim, and a third party, who caused the worker's injury. Relying on *Lee* for the proposition that, although a claim for loss of consortium is "derivative for some purposes," it "gives rise to a separate right of recovery," *id.*, the division concluded that, absent bad faith in settling the spouse's claim, the insurer did not have a subrogation interest in the fund created by the settlement with the spouse.

In *George v. Welch*, 997 P.2d 1248, 1250–51 (Colo.App.1999), *rev'd on other grounds*, 19 P.3d 675 (Colo.2000), the division cited *Crouch* for the proposition that loss of consortium is a separate claim. It then concluded that, "[b]y settling her own claims against [the] defendant, plaintiff's wife was not thereby releasing [the] defendant from liability as to claims belonging to her husband." *Id.* at 1251.

■ This authority is consistent with the cases, cited above, that describe loss of consortium as a separate derivative claim. Here, although the settlement agreement resolved wife's claim, it did not state that her claim was unsuccessful on the merits, that it was defeated by defenses, that it failed on substantive grounds, or that it was prohibited by statute. Therefore, under cases such as *Terry*, *Schwindt*, *Kinsella*, and *Covert*, the settlement agreement did not perform any of the functions that would bar a derivative claim.

Further, the settlement agreement awarded wife compensation for her injuries. Because husband's separate derivative claim for loss of consortium depends upon wife's right to recover, *Jorgensen*, 992 P.2d at 1164, and because wife *did* recover, husband's loss of consortium claim is not barred by the settlement agreement.

We conclude that because husband's loss of consortium claim is a separate derivative claim, it is not automatically barred by wife's settlement of her claims. Thus, under the circumstances here, the continuing vitality of husband's claim depends solely on whether he released his *own* right to sue by signing the settlement agreement. We have concluded above that he did not do so.

### D. Negligent Infliction of Emotional Distress

Husband contends that the trial court erred when it granted summary judgment to defendants on his claim for negligent infliction of emotional distress on the ground that it was derivative of wife's previously settled personal injury claims. We agree.

■ As an initial matter, we decline to address the question whether husband's complaint sufficiently pled a claim for negligent infliction of emotional distress based on the "zone of danger" theory. This argument was not addressed by the trial court and was not a basis for its ruling. *See In re Marriage of Hall*, 241 P.3d 540, 542 n. 1 (Colo.2010) ("We find it unnecessary to address the respondent's second argument.... We note that, although raised by respondent, the trial court did not rule on this issue."); *People v. Salazar*, 964 P.2d 502, 507 (Colo.1998) ("It is axiomatic that issues not raised in or decided by a lower court will not be addressed for the first time on appeal."); *Colby v. Progressive Cas. Ins. Co.*, 928 P.2d 1298, 1301 (Colo.1996)(appeal from grant of summary judgment; "The record before us compels the conclusion that the second issue upon which we granted certiorari ... was not addressed by the trial court.... Issues not decided by the lower court may not be addressed for the first time on appeal."); *Committee for Better Health Care v. Meyer*, 830 P.2d 884, 888 (Colo.1992)("It is axiomatic that in any appellate proceeding this court may consider only issues that have actually been determined by another court or agency and have been properly presented for our consideration."); *Crown Life Ins. Co. v. April Corp.*, 855 P.2d 12, 15 (Colo.App.1992) (declining to address issue not reached by trial court).

■ Whether a claim for negligent infliction of emotional distress is derivative of a third party's claim for personal injury is an issue of first impression in Colorado. We review questions of law de novo. *E–470 Pub. Highway Auth. v. 455 Co.*, 3 P.3d at 22.

■ An examination of the elements of a claim for negligent infliction of emotional distress under Colorado law reveals that the cause of action is properly viewed as independent of any action for personal injury by another person. To establish the claim, a plaintiff must show that the defendant's negligence created an unreasonable risk of physical harm and caused the plaintiff to be put in fear for his or her own safety, that this fear had physical consequences or resulted in long-continued emotional disturbance, and that the plaintiff's fear was the cause of the

damages sought. *Colwell v. Mentzer Investments, Inc.*, 973 P.2d 631, 638 (Colo.App. 1998). The plaintiff must also show that he or she either suffered physical injury or was in the "zone of danger." *Culpepper v. Pearl Street Building, Inc.*, 877 P.2d 877, 880 n. 3 (Colo.1994); *Towns v. Anderson*, 195 Colo. 517, 520, 579 P.2d 1163, 1165 (1978). "If the plaintiff has observed injury to a family member but was in no danger herself, there can be no recovery." *Colwell*, 973 P.2d at 638 (citing *Kimelman v. City of Colorado Springs*, 775 P.2d 51 (Colo.App.1988)).

 Thus, a direct effect on the plaintiff—being placed in danger and in fear for one's own safety—is necessary to a claim of negligent infliction of emotional distress. Although the plaintiff's trauma would clearly be exacerbated by witnessing injury to a loved one during the same incident, the threshold inquiry concerns the direct harm to the plaintiff.

The majority of jurisdictions that have addressed this issue agree that negligent infliction of emotional distress is not a derivative claim. Rather, it "is an independent tort injury suffered by the bystander himself or herself as a result of the shock of having witnessed an extraordinary and traumatic event." *Finnegan ex rel. Skoglind v. Wisconsin Patients Comp. Fund*, 263 Wis.2d 574, 666 N.W.2d 797, 805 (2003); *see also State Farm Mut. Auto. Ins. Co. v. Lawrence*, 26 P.3d 1074, 1079 (Alaska 2001)("Unlike claims for loss of consortium, claims for emotional distress concern injuries that the claimants have suffered directly, rather than derivative injuries that resulted from an injury to another."); *Tabieros v. Clark Equip. Co.*, 85 Hawai'i 336, 944 P.2d 1279, 1304 (1997)(negligent infliction of emotional distress claims "are only derivative in the sense that they do not arise unless one's spouse has sustained a personal injury")(quoting *Brown v. KFC Nat'l Mgmt. Co.*, 82 Hawai'i 226, 921 P.2d 146, 161 (1996)); *Auto Club Ins. Ass'n v. Hardiman*, 228 Mich.App. 470, 579 N.W.2d 115, 117 (1998); *Bosch v. St. Louis Healthcare Network*, 41 S.W.3d 462, 465 (Mo.2001); *Bernard v. Cordle*, 116 Ohio App.3d 116, 687 N.E.2d 3, 5–7 (1996); *Anthem Cas. Ins. Co. v. Miller*, 729 A.2d 1227, 1228 (Pa.Super.Ct.1999) ("[A] claim for negligent infliction of emotional distress does not arise from the injuries sustained by the victim, but rather it arises from the *witnessing* of the *accident*.") (emphasis in original).

An exception to this general rule has sometimes been found in the context of interpreting specific statutes or contract terms. *See, e.g., Indiana Patient's Comp. Fund v. Winkle*, 863 N.E.2d 1, 7 (Ind.Ct.App.2007) (negligent infliction of emotional distress, though an independent tort, fell under specific definition of "derivative claim" in medical malpractice statute). That exception does not apply here because the settlement agreement did not classify husband's claim as a derivative claim. As indicated above, the settlement agreement did not address husband's claims at all.

We therefore conclude that a claim of negligent infliction of emotional distress describes an independent tort injury suffered by the plaintiff directly; it is not derivative of a third person's personal injury claim. Thus, this was not a proper ground for summary judgment.

### E. Relation Back of Bodily Injury Claims

 Husband contends that the trial court erred by ruling that his claim for bodily injury was barred by the statute of limitations. We agree.

 We review a district court's order dismissing a claim on statute of limitations grounds de novo. *Currier v. Sutherland*, 215 P.3d 1155, 1158 (Colo.App.2008), *aff'd*, 218 P.3d 709 (Colo.2009).

Husband filed his original complaint one day less than three years after the collision. Under each claim for relief, the complaint alleged that husband "sustained severe emotional trauma, distress and harm" as a result of defendants' negligence.

Fourteen months later, the trial court allowed husband to amend his complaint. The amended complaint added the factual allegation that "[husband] sustained bodily injury in the moments following the subject incident while attempting to move the minor children and their baby seats out of harm's way." It also added "bodily injury" to the list of dam-

ages husband allegedly sustained as a result of defendants' negligence.

Section 13–80–101(1)(n)(I), C.R.S.2010, provides a three-year statute of limitations for "[a]ll tort actions for bodily injury or property damage arising out of the use or operation of a motor vehicle." Thus, because husband first asserted his claims for bodily injury more than four years after the collision, he cannot recover on those claims unless the amendment relates back to the date of the original complaint.

C.R.C.P. 15(c) provides: "Whenever the claim … asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." *See also Denver & Rio Grande W. R.R. Co. v. Clint*, 235 F.2d 445, 447 (10th Cir.1956) (under both state and federal civil procedure rules, claims in an amended complaint related back where (1) amended claims arose out of the same conduct and occurrence set forth, or attempted to be set forth in the original complaint; (2) the parties and occurrence were the same; and (3) the same negligence was pled as the proximate cause of the accident).

Here, the alleged bodily injury arose from the same conduct and occurrence set forth in the original complaint. The parties were the same, and the same negligence was pled as the proximate cause of husband's injuries. We therefore conclude that the amendment relates back to the date of the original pleading. Thus, the trial court erred by dismissing that claim as time barred.

### F. Negligent Entrustment

Husband contends that the trial court erred by granting summary judgment in favor of defendants as to his claim of negligent entrustment. Again, we agree.

As an initial matter, we decline to address husband's arguments regarding the family car doctrine, which were not reached by the trial court. *See In re Marriage of Hall*, 241 P.3d at 542 n. 1; *Salazar*, 964 P.2d at 507; *Colby*, 928 P.2d at 1301; *Committee for Bet-*

*ter Health Care*, 830 P.2d at 888; *Crown Life Ins. Co.*, 855 P.2d at 15.

Colorado recognizes the tort of negligent entrustment as set forth in section 308 of the Restatement (Second) of Torts (1965):

> It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

*See Casebolt*, 829 P.2d at 357 (adopting sections 308 and 390 of the Restatement). The negligent entrustment of an automobile is further described by section 390 of the Restatement:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

In determining whether defendants are entitled to judgment as a matter of law, we must allow husband the benefit of all favorable inferences that may reasonably be drawn from the undisputed facts, and resolve all doubts against defendants. *See Casebolt*, 829 P.2d at 354.

Here, the following facts are not in dispute:

- the parents owned the truck operated by the friend in the collision;
- the parents entrusted the truck to their son;
- the son entrusted the truck to his friend; and
- the son was nineteen years old at the time of the collision.

The following facts do not appear to be resolved by the existing record:

- whether the friend possessed a learner's permit, and whether the parents and the son knew she had, or did not have, one;
- whether the parents knew or should have known that their son would allow his friend to drive the truck;
- if the parents knew or should have known that the friend would drive the truck, whether they also knew or should have known she was an unsafe driver due to her inexperience;
- whether the son knew or should have known that his friend was an unsafe driver due to her inexperience; and
- whether the acts or omissions of the friend, the son, or both were the proximate cause of husband's injuries.

The parents and the son deny having had "specific knowledge" that the friend would, or did, misuse the truck. However, specific knowledge is not required if the supplier of a chattel "had reason to know ... because of [the entrustee's] youth, inexperience, or otherwise" that the entrustee was likely to use the chattel in a manner involving an unreasonable risk of physical harm. Restatement § 390.

The record does not establish whether the parents and the son were aware of the friend's lack of experience as a driver or whether she had a driving permit. Such facts are relevant to deciding whether they knew, or had reason to know, that she was an unsafe driver.

Husband also contends that the friend violated section 42–2–106(1)(a)(I), C.R.S.2010, by driving on a learner's permit without proper supervision. That section provides that a driver with a learner's permit must be accompanied by a parent, guardian, or a designee over the age of twenty-one. "[T] he violation of [a] statute [may] be relevant to a claim based on the theory of negligent entrustment." *Schneider v. Midtown Motor Co.*, 854 P.2d 1322, 1326 (Colo.App. 1992).

Thus, as we must resolve all doubts in favor of husband, we conclude that there is a disputed question of material fact concerning whether the parents and the son knew, or should have known, that the friend was an unsafe driver. Therefore, we reverse the trial court's order granting summary judgment on this claim.

### III. C.A.R. 28(k)

Although husband's opening brief correctly stated the general standard of review for a grant of summary judgment, it failed to set out the appropriate standard for *each issue* as required by C.A.R. 28(k). For example, resolution of the issue whether husband released his claims by signing the settlement agreement is a question of contract interpretation. Husband's opening brief cites no authority establishing the proper standard of review for this issue. Contrary to the assertion in husband's reply brief, proper compliance with C.A.R. 28(k) would not lead to "four identical discussions under four different subheadings."

The opening brief also fails to set out, under a separate heading for each issue, a citation to the precise location in the record where the issue was raised and ruled on.

The appellate rules are not mere technicalities, but rather serve an important purpose in facilitating appellate review. *See O'Quinn v. Baca*, 250 P.3d 629, 631–32 (Colo. App.2010). We remind husband's counsel to comply with C.A.R. 28(k) in the future, noting that appropriate sanctions may be imposed if that rule, or any other applicable appellate rule, is not satisfied. *See Bruce v. City of Colorado Springs*, 252 P.3d 30, 32 (Colo.App.2010) (recognizing that noncompliance with appellate procedural rule ordinarily results in division summarily striking brief).

The judgment is reversed and the case is remanded to the trial court with directions to reinstate husband's claims.

Judge GRAHAM and Judge FOX concur.