Colorado Court of Appeals Opinions || October 8, 2015


Colorado Court of Appeals -- October 8, 2015
2015 COA 146. No. 14CA2026. Beasley v. Best Car Buys, LTD.



 Â 

 
 
 
 COLORADO COURT OF APPEALS

 
 2015 COA 145

 
 



 Court of Appeals No. 14CA2026
 City and County of Denver District Court No. 13CA34277
 Honorable Shelley I. Gilman, Judge


 Camell Beasley,

 Plaintiff-Appellant,

 v.

 Best Car Buys, LTD,

 Defendant-Appellee.


 JUDGMENT AFFIRMED

 Division III
 Opinion by JUDGE FOX
 Webb and Berger, JJ., concur

 Announced October 8, 2015


 Bachus & Schanker, LLC, David W. Krivit, Denver, Colorado, for Plaintiff-Appellant

 White and Steele P.C., James M. Dieterich, Denver, Colorado, for Defendant-Appellee
 Â 

 Â¶1Â Â Â Â Â Â Â Â  In this civil negligence dispute, Camell Beasley appeals from the district courtâs grant of summary judgment in favor of Best Car Buys, LTD (BCB). As an issue of first impression in Colorado, we address whether car vendors have a legal duty to inquire into a buyerâs driving history before selling him a car. We conclude that no such duty exists, and we affirm.

 I. Background

 Â¶2Â Â Â Â Â Â Â Â  The following facts are undisputed.

 Â¶3Â Â Â Â Â Â Â Â  BCB sold a car to Peter Reynoso and Erica Yancey, who were co-signatories on the sales contract. At the time of sale, Reynoso presented BCB with a Colorado identification card and Yancey presented a valid Colorado driverâs license. Eight days later, Reynoso, who was driving the newly purchased car, struck Beasley, who was driving a motorcycle. Beasley suffered injuries from the accident.Â 

 Â¶4Â Â Â Â Â Â Â Â  Beasley sued BCB[1] for negligence and negligent entrustment, claiming that BCB negligently sold a car to Reynoso, who âdid not have a driverâs licenseâ and who âwas not a safe driver.â[2] BCB moved for summary judgment, arguing that there was no evidence BCB knew or had reason to know that Reynoso was likely to use the car in a risky manner, and that BCB had no duty to investigate Reynosoâs driving history. Over Beasleyâs opposition, the district granted summary judgment in BCBâs favor.

 II. Standard of Review

 Â¶5Â Â Â Â Â Â Â Â  We review de novo a trial courtâs grant of summary judgment. Shelter Mut. Ins. Co. v. Mid-Century Ins. Co., 246 P.3d 651, 657 (Colo. 2011). Summary judgment is appropriate when the pleadings and supporting documents demonstrate that there is noÂ genuine issue of material fact and that one party is entitled to judgment as a matter of law. C.R.C.P. 56(c); Natural Energy Res. Co. v. Upper Gunnison River Water Conservancy Dist., 142 P.3d 1265, 1276 (Colo. 2006). We view all facts in the light most favorable to the nonmoving party. Tapley v. Golden Big O Tires, 676 P.2d 676, 678 (Colo. 1983).

 III. Negligence and Negligent Entrustment

 Â¶6Â Â Â Â Â Â Â Â  Beasley contends that the district court erred in concluding that there was no evidence to support his negligence and negligent entrustment claims. These claims were premised on the same act â BCBâs alleged negligence in selling, or entrusting, a car to Reynoso. Beasley first contends that this act was negligent because BCB had a duty to inquire into Reynosoâs driving history and breached that duty when it did not so inquire. Second, Beasley contends that the sale was negligent because BCB had reason to know, based solely on Reynosoâs lack of a license, that Reynoso would use the car in a manner likely to cause harm. Without proof of licensure, Beasley contends, BCB had a duty not to sell the car to Reynoso. Because the record fails to disclose any disputed issuesÂ of material fact with regard to these contentions and because Beasleyâs contentions are legally untenable, we agree with the district courtâs decision to grant summary judgment in BCBâs favor. A. Legal Principles

 Â¶7Â Â Â Â Â Â Â Â  To recover for the negligent conduct of another, a plaintiff must establish the existence of a duty owed by a defendant and a breach of that duty, which actually and proximately caused injury to the plaintiff. Casebolt v. Cowan, 829 P.2d 352, 356 (Colo. 1992). A principal element of any negligence claim â and the primary issue in this case â is whether, as a matter of law, a duty existed. Id. at 355-56.

 Â¶8Â Â Â Â Â Â Â Â  The negligent entrustment doctrine, which âis part of the law of negligence in this state,â id. at 357, articulates a set of standards that, if met, establish the duty element of negligence, Peterson v. Halstead, 829 P.2d 373, 378 (Colo. 1992).

 Â¶9Â Â Â Â Â Â Â Â  The doctrine provides:

 One who supplies . . . chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others . . . isÂ subject to liability for physical harm resulting to them.

 Restatement (Second) of Torts Â§ 390 (1965) (hereinafter Restatement); see Casebolt, 829 P.2d at 355-63 (adopting Restatement section 390 as providing the framework to analyze the negligent entrustment of a motor vehicle); see also Liebelt v. Bob Penkus Volvo-Mazda, Inc., 961 P.2d 1147, 1149 (Colo. App. 1998) (stating that liability for negligent entrustment of an automobile depends on whether the supplier knew or had reason to know the likelihood of harm).

 Â¶10Â Â Â Â Â Â Â Â  A supplier has âreason to knowâ that a person is likely to use the chattel in a manner involving unreasonable risk of physical harm, and therefore a duty not to facilitate such use, when

 the actor has information from which a person of reasonable intelligence or of the superior intelligence of the actor would infer that the fact in question exists, or that such person would govern his conduct upon the assumption that such fact exists.

 Restatement Â§ 12. The âreason to knowâ standard does not impose a duty upon the supplier to ascertain unknown facts. Id. at cmt. a; see Liebelt, 961 P.2d at 1149 (explaining that while ââshould knowâÂ creates a duty to use reasonable diligence to ascertain the existence or non-existence of the fact in question,â the phrase âreason to knowâ does not).

 Â¶11Â Â Â Â Â Â Â Â  Other factors used to determine the existence of a duty include âthe risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the [defendantâs] conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden upon the [defendant].â Casebolt, 829 P.2d at 356. No one factor is controlling, and whether âa duty should be imposed in a particular case is essentially one of fairness under contemporary standards.â Taco Bell, Inc. v. Lannon, 744 P.2d 43, 46 (Colo. 1987).

 Â¶12Â Â Â Â Â Â Â Â  Affording Beasley all favorable inferences, we apply these principles of negligence and negligent entrustment to determine whether the district court erred in summarily dismissing Beasleyâs claims.

 B. Duty to Investigate a Buyerâs Driving History

 Â¶13Â Â Â Â Â Â Â Â  Beasley claimed that BCB negligently sold the car to Reynoso because BCB had a duty to investigate Reynosoâs driving history[3]and declined to do so. In granting summary judgment, the district court reasoned that âthere is no legal requirement for automobile dealerships to conduct a search of a buyerâs driving history or to inquire as to the status of the buyerâs driverâs license.â The court then declined to impose such a requirement in part because it âwould be contrary to public policy considerations set forth in Liebelt[,] 961 P.2d at 1149.â

 Â¶14Â Â Â Â Â Â Â Â  We agree with the district court. We cannot find, and Beasley does not cite to, any Colorado case that has expressly held that a car vendor has a duty to inquire into a buyerâs driving history or to investigate the status of his license, particularly when that vendorÂ has no reason to believe that the purchaser has dangerous driving habits. Indeed, decisions from other divisions of this court suggest otherwise. In Baker v. Bratrsovsky, 689 P.2d 722, 723-24 (Colo. App. 1984), the division concluded that the car vendor, who sold a seemingly inoperable car, had no actual knowledge of the plaintiffâs driving record and no duty to investigate it.

 Â¶15Â Â Â Â Â Â Â Â  In Liebelt, 961 P.2d at 1148-49, the division addressed whether car vendors have a duty to investigate (1) whether the purchaser of a car is to be the driver and (2) the status of a driverâs insurance before completing the sale. Analyzing the factors of duty under general negligence principles, the division decided against imposing such a duty. Id. The division reasoned that lack of insurance is not tantamount to incompetency; the sellerâs duty of inquiry would not necessarily be limited to the purchaser, raising questions about the precise circumstances in which the duty would apply; the utility of recognizing such a duty had not been demonstrated and could not be assumed; and imposing the duty could impact commerce. Id. at 1149.

 Â¶16Â Â Â Â Â Â Â Â  Like the Liebelt division, we see no utility in imposing a duty on sellers to inquire into every vehicle purchaserâs driving history. Such a duty would have practical and economic consequences for car suppliers, as the inquiry might not stop with the vehicle purchaser. It could extend to all potential drivers of a vehicle, raising uncertainty as to the precise circumstances in which this duty would arise and how it would comport with the holding in Liebelt. See id. at 1148-49 (concluding, in part, that a dealership has no duty to inquire into whether the purchaser of the car is to be the driver); see also Vic Potamkin Chevrolet, Inc. v. Horne, 505 So. 2d 560, 563 (Fla. Dist. Ct. App. 1987) (âWe think it sufficient for a dealer prior to delivery of a car to determine that a buyer has a valid license. We think it inappropriate to further burden car dealers with an additional obligation of determining that every customer [or future user] is a safe driver.â) (emphasis added). Moreover, this inquiry and the purchaserâs later (and potential) use of the vehicle could have minimal correlation. See, e.g., Peterson, 829 P.2d at 378 (noting the attenuated connection between a car ownerâs knowledgeÂ of a driverâs dangerous driving habits, including alcohol use, and the accident that occurred years later).

 Â¶17Â Â Â Â Â Â Â Â  In addition, the imposition of such a duty would be contrary to the plain language of Restatement sections 12 and 390, under which suppliers of motor vehicles have no duty to ascertain unknown facts. See Restatement Â§ 12 cmt. a (explaining that âreason to know[,]â as used in Restatement section 390, âimplies no duty of knowledge on the part of the actor whereas âshould knowâ implies that the actor owes another the duty of ascertaining the fact in questionâ); see also Casebolt, 829 P.2d at 357. Imposing a legal duty on car vendors, particularly one that has not previously been recognized, is better left to the legislative process. See Nunez v. A & M Rentals, Inc., 822 N.E.2d 743, 747-48 (Mass. App. Ct. 2005).

 Â¶18Â Â Â Â Â Â Â Â  Numerous other jurisdictions have also declined an invitation to create the duty urged by Beasley. See, e.g., Dodge Ctr. v. Superior Court, 244 Cal. Rptr. 789, 795 (Cal. Ct. App. 1988) (concluding that a car dealership âowed no legal duty to plaintiffs to inquire into [a purchaserâs] driving record before selling him a vehicleâ); Evans v. Shannon, 776 N.E.2d 1184, 1191 (Ill. 2002) (holding that a carÂ detailer had no duty to inquire as to a driverâs license status or background when the detailer âneither knew, nor had reason to knowâ that the employee would use the car in a manner involving an unreasonable risk of harm to others); Nunez, 822 N.E.2d at 747Â­48 (declining to impose a duty on a car dealership to verify the status of a purchaserâs license and stating that it is within the province of the legislature to do so); Johnson v. Johnson, 611 N.W.2d 823, 826 (Minn. Ct. App. 2000) (â[T]here is no basis for requiring sellers who check purchasersâ license status to check the license status of prospective drivers as well.â); Laurel Yamaha, Inc. v. Freeman, 956 So. 2d 897, 904 (Miss. 2007) (recognizing no Mississippi law that imposes a duty on a seller to restrict motor vehicle sales to licensed drivers or to determine the competence of drivers as part of the sale and declining to impose such duty); Sikora v. Wade, 342 A.2d 580, 582 (N.J. Super. Ct. Law Div. 1975) (discussing the negative public policy implications in imposing upon car vendors the duty to inquire into a car purchaserâs driving ability and concluding that such an imposition âwould unduly hamperÂ commerce and would pose an undue burden on ordinary business relationshipsâ).

 Â¶19Â Â Â Â Â Â Â Â  Accordingly, we conclude that, under these circumstances, BCB had no duty to inquire into or investigate Reynosoâs driving history. Because a negligence claim cannot succeed without a showing that a duty existed, Walcott v. Total Petroleum, Inc., 964 P.2d 609, 610 (Colo. App. 1998), we agree with the district courtâs resolution of this issue.

 C. Absence of a License

 Â¶20Â Â Â Â Â Â Â Â  Beasley also contended that BCB negligently entrusted the car to Reynoso without requiring that he present a valid driverâs license. To find negligence here, Restatement section 390 requires a determination that BCB had (1) actual knowledge or (2) a reason to know that, in entrusting the car to Reynoso, there was a likelihood that he would use the car in a manner likely to cause harm. See Liebolt, 961 P.2d at 1149. We agree with the district court that the record contains insufficient evidence to support either determination.

 Â¶21Â Â Â Â Â Â Â Â  First, Beasley concedes, and the record reflects, that BCB did not have actual knowledge that Reynoso would use the vehicle in a manner likely to cause harm. At the time of the car sale, BCB did not know why Reynoso lacked a license, nor was BCB aware of Reynosoâs driving history, and BCB had no duty to ascertain or to investigate either. See Restatement Â§ 12 cmt. a; see also Liebolt, 961 P.2d at 1149; but see Schneider v. Midtown Motor Co., 854 P.2d 1322, 1324 (Colo. App. 1992) (reversing a district courtâs grant of summary judgment because conflicting evidence existed as to whether the dealership knew or had reason to know about the driverâs dangerous driving habits because, at the time of sale, the driver was unlicensed, an agent described him as a crazy driver, and the dealership observed him âspinning the tires and driving like a wild manâ).

 Â¶22Â Â Â Â Â Â Â Â  Second, we cannot conclude that BCB âhad reason to knowâ that Reynoso would use the car in a manner likely to cause harm, and thus had a duty to deny the sale, merely because Reynoso did not present a valid driverâs license. While we agree with Beasley that lack of a license might signify a driverâs incompetence, weÂ disagree that the absence of a license necessarily means this. See, e.g., Lathe v. Depât of Revenue, Motor Vehicle Div., 691 P.2d 356, 356 (Colo. App. 1984) (the plaintiffâs driverâs license was suspended for failing to notify the Department of Revenue of his change of address). Lack of a license could mean a number of things aside from a potential for dangerous driving â for example, that the customer lost it or that he has not yet acquired one due to recently moving to the state. And again, under Restatement section 390, BCB had no duty to inquire into why Reynoso did not produce a license. See Restatement Â§ 12 cmt a. There is also no evidence in the record suggesting that BCB had any reason to know, assume, or infer that Reynoso did not have a license because of a dangerous driving history.

 Â¶23Â Â Â Â Â Â Â Â  As Beasley contends, however, some courts have considered the lack of a license to be a factor in determining the liability of a vehicle vendor or donor who has entrusted the vehicle to a dangerous driver. See Hertz Driv-Ur-Self Sys. v. Henrickson, 109 Colo. 1, 3-5, 121 P.2d 483, 484 (1942); Draper v. DeFrenchi-Gordineer, 282 P.3d 489, 499 (Colo. App. 2011). However, none ofÂ these courts has concluded that the absence of a license is dispositive. Other evidence of a donorâs or vendorâs knowledge of the driverâs dangerous tendencies is required. See Hertz Driv-Ur-Self Sys., 109 Colo. at 3-5, 121 P.2d at 484 (concluding that merely leasing a car to an unlicensed driver without reason to believe that the driver is dangerous did not create liability); Draper, 282 P.3d at 499 (reversing a trial courtâs grant of summary judgment because disputed facts existed as to whether the car donor had reason to know the status of the driverâs permit and her lack of driving experience).

 Â¶24Â Â Â Â Â Â Â Â  Here, we have no additional evidence that BCB knew or had reason to know of Reynosoâs potential for dangerous driving. The summary judgment record does not suggest that anyone at BCB observed Reynoso driving dangerously, nor does Beasley contend this. No evidence was presented that anyone told BCB agents that Reynoso was an incompetent or inexperienced driver. Without additional evidence, aside from an absent license, suggesting the BCB âhad reason to knowâ about Reynosoâs driving behaviors, weÂ cannot conclude that a disputed issue of material fact existed as to whether BCB negligently sold him the car.

 Â¶25Â Â Â Â Â Â Â Â  Citing various out-of-state cases â Kinney v. Smith, 508 P.2d 1234, 1237 (Idaho 1973); Seward v. Griffin, 452 N.E.2d 558, 563 (Ill. App. Ct. 1983); and Barnes v. Zinda, 464 S.W.2d 501, 504 (Tex. Civ. App. 1971) â and one Colorado case â Draper, 282 P.3d at 498-99 â Beasley urges us to conclude otherwise. We decline to do so, however, because all the cited cases are inapposite.

 Â¶26Â Â Â Â Â Â Â Â  None of the out-of-state cases interprets Restatement section 390 or the phrase âreason to know[,]â which govern our review of the issue. See Kinney, 508 P.2d at 1237 (interpreting section 49Â­339 of the Idaho Code, which requires car owners to check a driverâs license before lending their cars); Seward, 452 N.E.2d at 563 (reviewing a negligent entrustment claim under general negligence principles); Barnes, 464 S.W.2d at 504 (reviewing a negligence per se claim under Texas Code article 6687b, section 36). Those cases do not aid us in interpreting or applying the particular standard applicable here. And, other jurisdictions that have applied Restatement section 390, and the âreason to knowâÂ standard, agree that a driverâs unlicensed status is insufficient to conclude, on that basis alone, that a car seller (or donor) had reason to know about that driverâs incompetence or had a duty to prevent the sale. See, e.g., Dodge Ctr., 244 Cal. Rptr. at 794 (â[T]he tort [of negligent entrustment] requires demonstration of actual knowledge of facts showing or suggesting the driverâs incompetence â not merely his lack of a license.â); Sikora, 342 A.2d at 581-83 (rejecting the rule that a donor may be liable for a doneeâs negligent operation of a vehicle when the donor gave the vehicle without knowledge of the doneeâs incompetence or license status). Moreover, each out-of-state case that Beasley cites concerns entrustment by a carâs owner or dealer to a single unlicensed driver, not, as here, to co-purchasers â one of whom provided a valid driverâs license.

 Â¶27Â Â Â Â Â Â Â Â  Additionally, Beasleyâs reliance on Draper, 282 P.3d at 499, is misplaced. In reversing a trial courtâs grant of summary judgment, the Draper division analyzed Restatement sections 308 and 390, but in doing so the division appears to have conflated the âshould knowâ and âreason to knowâ standards. See id. (stating thatÂ specific knowledge is not required if the carâs donor âhad reason to knowâ that the driver was likely to use the car unreasonably but then concluding that whether the donor âknew, or should have knownâ that the driver was unsafe remained in dispute) (emphasis added); but see Liebelt, 961 P.2d at 1149 (explaining the pivotal difference between the âshould knowâ and âreason to knowâ standards in negligent entrustment jurisprudence). Whether the car donor had actual knowledge of the driverâs driving history or experience remained a disputed issue of material fact in Draper, thus precluding summary judgment on the claim. Here, in contrast, neither party disputes that BCB did not have actual knowledge of such information.

 Â¶28Â Â Â Â Â Â Â Â  Even if lack of a license was sufficient to infer that a motor vehicle supplier had reason to know of a driverâs dangerous habits and therefore a duty to decline the sale, it would not be sufficient here. The record clearly reflects that Yancey, the carâs co-purchaser, provided BCB with a valid license. A supplier of cars isÂ not required to verify for whom the car is purchased or who will be driving off the lot. See Liebolt, 961 P.2d at 1148.[4]

 Â¶29Â Â Â Â Â Â Â Â  We therefore conclude that, under these circumstances, the absence of Reynosoâs driverâs license, without more, was insufficient to conclude that BCB knew or had reason to know that he would use the car in a manner likely to cause harm. Accordingly, we agree with the district courtâs resolution of this issue.

 IV. Negligence Per Se

 Â¶30Â Â Â Â Â Â Â Â  Beasley now contends that BCB had a statutory duty under section 42-2-140, C.R.S. 2015, to ensure that Reynoso was properly licensed and not incompetent to drive before selling him a car. Beasley cites Schneider, 854 P.2d at 1326, as support for the proposition that a violation of section 42-2-140 âmay, in some instances, constitute negligence.â To the extent that Beasley urgesÂ us to find error in the courtâs grant of summary judgment under a theory of negligence per se for a violation of section 42-2-140, we decline to do so because Beasley did not raise this argument in the district court and the district court did not reach the issue. See Draper, 282 P.3d at 498 (declining to address a matter on appeal that was not reached by the trial court); Forrest v. Lorrigan, 833 P.2d 873, 875 (Colo. App. 1992) (same).

 Â¶31Â Â Â Â Â Â Â Â  In any event, Reynosoâs co-purchaser, Yancey, presented a valid driverâs license when purchasing the vehicle, rendering section 42-2-140 inapplicable. See Schneider, 854 P.2d at 1325 (applying the statute to a situation where one unlicensed driver purchased a vehicle). And, nothing in this statute requires suppliers to also investigate a car purchaserâs driving history. Had the legislature wanted to include such a requirement, it could have done so. Springer v. City & Cnty. of Denver, 13 P.3d 794, 804 (Colo. 2000) (âWhere the legislature could have chosen to restrict the application of a statute, but chose not to, we do not read additional restrictions into the statute.â).

 V. Conclusion

 Â¶32Â Â Â Â Â Â Â Â  Affording Beasley all favorable inferences, see Tapley, 676 P.2d at 678, we conclude that the district court did not err in granting summary judgment in BCBâs favor as to Beasleyâs negligence and negligent entrustment claims. Thus, the district courtâs judgment is affirmed.

 JUDGE WEBB and JUDGE BERGER concur.


 [1] Beasley also named Reynoso and Yancey as defendants. Beasley later settled with each of them. The settlements included dismissal of all claims with prejudice, and neither Reynoso nor Yancey is a party to this appeal.

 [2] Beasley also asserted that BCB acted negligently in failing to verify Reynosoâs car insurance before selling him the car. However, because Beasley does not raise this issue on appeal, we need not address it. See Moody v. People, 159 P.3d 611, 614 (Colo. 2007) (â[A]rguments not advanced on appeal are generally deemed waived.â).

 [3] Beasley refers to Reynoso as a âhabitual traffic offender.â The district courtâs summary judgment order also states that Reynoso was a âhabitual traffic offender.â However, the court made no findings about Reynosoâs driving record or any specific accident history. Because the record does not contain any evidence of Reynosoâs driving history, we cannot address or consider that history on appeal. See Colby v. Progressive Cas. Ins. Co., 928 P.2d 1298, 1301 (Colo. 1996) (âIssues not decided by the lower court may not be addressed for the first time on appeal.â).

 [4] Relying on information contained in an affidavit of Benjamin Hartford, Beasley alleges that Reynoso drove the car off the lot and that BCB was aware that he planned to do so. However, Beasley did not present, or otherwise rely on, this information in his summary judgment response below. Because the information in the affidavit was not at issue before the district court, it is not properly before us on appeal. We therefore do not address or consider it. See Colby, 928 P.2d at 1301. And we express no opinion about what the result may have been had the affidavit been properly before the court.




These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 



Colorado Court of Appeals Opinions || October 8, 2015


Back